**No. 2023-1194**

# United States Court of Appeals for the Federal Circuit

MAXELL, LTD.,
*Plaintiff-Appellant*

v.

AMPEREX TECHNOLOGY LIMITED,
*Defendant-Appellee*

On appeal from the United States District Court for the Western District of Texas, Nos. 6:21-cv-00347-ADA, 6:21-cv-01007-ADA
Hon. Alan D. Albright

## CORRECTED RESPONSE BRIEF OF APPELLEE

Harold H. Davis Jr., *Lead Counsel*
David S. Bloch
GREENBERG TRAURIG LLP
101 Second Street, Suite 2200
San Francisco, CA 94105
(415) 655-1300 Telephone
(415) 707-2010 Facsimile
Email: Hal.Davis@gtlaw.com
Email: blochd@gtlaw.com

Yang Liu
GREENBERG TRAURIG LLP
1900 University Ave, 5th Floor
East Palo Alto, CA 94303
(650) 328-8500 Telephone
(650) 328-8508 Facsimile
Email: Yang.Liu@gtlaw.com

*Counsel for Defendant-Appellee Amperex Technology Limited*

April 11, 2023

## Claim 1 of U.S. Patent No. 9,077,035

1. A nonaqueous secondary battery comprising:

a positive electrode having a positive electrode mixture layer, a negative electrode, and a nonaqueous electrolyte,

wherein the positive electrode comprises, as active materials, at least two lithium-containing transition metal oxides having different average particle sizes, and the lithium-containing transition metal oxide having the smallest average particle size is a lithium-containing transition metal oxide represented by the formula (1):

$$Li_xM^1_yM^2_zM^3_vO_2 \quad (1)$$

**wherein $M^1$ represents at least one transition metal element selected from Co, Ni and Mn**, $M^2$ represents Mg and at least one metal element selected from the group consisting of Ti, Zr, Ge, Nb, Al and Sn, $M^3$ represents at least one element selected from the group consisting of Na, K, Rb, Be, Ca, Sr, Ba, Sc, Y, La, Hf, V, Ta, Cr, Mo, W, Tc, Re, Fe, Ru, Rh, Cu, Ag, Au, B, Ca, In, Si, P and Bi, and x, y, z and v are numbers satisfying the equations respectively: $0.97 \le x < 1.02$, $0.8 \le y < 1.02$, $0.002 \le z \le 0.05$, and $0 \le v \le 0.05$, and has an average particle size from 2 μm to 10 μm, and the lithium-containing transition metal oxide having the largest average particle size is a lithium-containing transition metal oxide represented by the formula (2):

$$Li_aM^1_bM^2_cM^3_dO_2 \quad (2)$$

wherein $M^1$, $M^2$ and $M^3$ are the same as defined in the formula (1), and a, b, c and d are numbers satisfying the equations respectively: $0.97 \le a < 1.02$, $0.8 \le b < 1.02$, $0.0002 \le c \le 0.02$, and $0 \le d \le 0.02$, and has an average particle size from 5 μm to 25 μm,

wherein said electrolyte contains a fluorine-containing organic solvent,

**wherein the content of Co in the transition metal $M^1$ of the formulae (1) and (2) is from 30% by mole to 100% by mole**,

wherein the content of said lithium-containing transition metal oxide having the smallest average particle size in the lithium-containing

transition metal oxides is from 5% by weight to 60% by weight,

wherein the content of said lithium-containing transition metal oxide having the largest average particle size in the lithium-containing transition metal oxides is from 40% by weight to 95% by weight, and

wherein an amount of said fluorine-containing organic solvent is 0.1% by weight to 30% by weight based on the whole weight of the electrolyte.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1194

**Short Case Caption** Maxell, Ltd. v. Amperex Technology Limited

**Filing Party/Entity** Amperex Technology Limited

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/31/2023

Signature: /s/ Harold H. Davis, Jr.

Name: Harold H. Davis, Jr.

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| Amperex Technology Limited | | TDK Corporation |
| | | TDK HongKong Company Limited |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☑ Additional pages attached

| | | |
|---|---|---|
| Howard Chen | Greenberg Traurig LLP | 101 Second Street, Suite 2200<br>San Francisco, CA 94105 |
| Rose Cordero Prey | Greenberg Traurig LLP | One Vanderbilt Avenue<br>New York, NY 10017 |
| Craig A. Duewall | Greenberg Traurig LLP | 300 West Sixth Street, Suite 2050<br>Austin, Texas 78701-4052 |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**CERTIFICATE OF INTEREST**
**ADDITIONAL PAGES**

Case Number: 2023-1194
Short Case Caption: Maxell, Ltd. v. Amperex Technology Limited
Filing Party/Entity: Amperex Technology Limited

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

| | | |
|---|---|---|
| James Joseph DeCarlo | Greenberg Traurig LLP | 500 Campus Drive, Suite 400<br>Florham Park, NJ 07932 |
| Nigamnarayan Acharya | Greenberg Traurig LLP | 333 Piedmont Road, NE, Suite 2500<br>Atlanta, GA 30305 |
| Joseph W. Shaneyfelt | Greenberg Traurig LLP | 300 West Sixth Street, Suite 2050<br>Austin, Texas 78701-4052 |
| Brian Prew | Greenberg Traurig LLP | One Vanderbilt Avenue<br>New York, NY 10017 |
| Andrea L. Fair | Ward, Smith & Hill, PLLC | P.O. Box 1231<br>Longview, TX 75606 |
| Charles Everingham IV | Ward, Smith & Hill, PLLC | 1507 Bill Owens Parkway<br>Longview, TX 75604 |
| Clare Abernathy Henry | Ward, Smith & Hill, PLLC | 1507 Bill Owens Parkway<br>Longview, TX 75604 |

## TABLE OF CONTENTS

STATEMENT OF RELATED CASES ........ 1

STATEMENT OF THE ISSUE ........ 2

STATEMENT OF THE CASE ........ 3

I. Introduction ........ 3
II. Background of the Dispute ........ 3
III. The District Court Held that Claim 1 of the ’035 Patent is Invalid Because the Term at Issue is Indefinite ........ 5
IV. The PTAB Determined that All Claims of the ’035 Patent Are Unpatentable ........ 10

SUMMARY OF THE ARGUMENT ........ 12

ARGUMENT ........ 16

I. Standard of Review ........ 16
II. The $M^1$ Terms Contain A Contradiction That Renders Claim 1 Indefinite ........ 17
III. Maxell’s Changing Position Regarding What the $M^1$ Terms Mean Highlights the Indefiniteness of the Underlying Claim ........ 22
IV. Maxell Fails to “Reconcile” the Contradictory Requirements ........ 25
V. Intrinsic and Extrinsic Evidence Does Not Support Maxell ........ 27
    A. The court correctly rejected Maxell’s arguments--twice ........ 28
    B. The specification cannot rescue Maxell’s claim ........ 29
    C. The prosecution history cannot rescue Maxell’s claim ........ 31
    D. Extrinsic evidence cannot rescue Maxell’s claim ........ 34
VI. Had Maxell Wanted to Draft A Claim That Required Cobalt, It Knew How To ........ 35

CONCLUSION ........ 37

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
299 F.3d 1336 (Fed. Cir. 2002) .......... 16, 17, 21, 37

*In re Amperex Tech. Ltd.*,
No. 2022-105, 2022 WL 135431 (Fed. Cir. Jan. 14, 2022) .......... 1, 4

*Amperex Tech. Ltd. v. Maxell, Ltd.*,
2021 WL 4398804 (D.N.J. Sept. 27, 2021) .......... 4

*Amperex Tech. Ltd. v. Maxell, Ltd.*,
No. 2022- 1017, 2022 WL 1021590 (Fed. Cir. Jan. 21, 2022) .......... 1

*Amperex Technology Limited v. Maxell, Ltd.*,
No. IPR2021-01441 .......... 1, 10

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
448 F.3d 1324 (Fed. Cir. 2006) .......... 36

*Banner v. United States*,
238 F.3d 1348 (Fed. Cir. 2001) .......... 11

*DeMarini Sports, Inc. v. Worth, Inc.*,
239 F.3d 1314 (Fed. Cir. 2001) .......... 33

*Eon Corp. IP Holdings LLC v. AT&T Mobility LLC*,
785 F.3d 616 (Fed. Cir. 2015) .......... 16, 34

*Flex-Rest, LLC v. Steelcase, Inc.*,
455 F.3d 1351 (Fed. Cir. 2006) .......... 16, 34

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
355 F.3d 1327 (Fed. Cir. 2004) .......... 12, 18, 30, 31

*Granite Mgmt. Corp. v. United States*,
416 F.3d 1373 (Fed. Cir. 2005) .......... 11

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
607 F.3d 776 (Fed. Cir. 2010) .......... 18

*Halliburton Energy Servs., Inc. v. M-I LLC*,
514 F.3d 1244 (Fed. Cir. 2008) .......... 16, 21, 22, 31

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
527 F.3d 1379 (Fed. Cir. 2008) ........................................................... 35

*Hill-Rom Servs. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) ........................................................... 13

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
175 F.3d 985 (Fed. Cir. 1999) ............................................................. 14

*Ex parte Markush*,
1925 Dec. Comm'r Pat. 126 (1924) ..................................................... 19

*Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*,
831 F.3d 1350 (Fed. Cir. 2016) ........................................................... 22

*Omega Eng'g, Inc, v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ........................................................... 36

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ......................................... 15, 18, 29, 35

*Saso Golf, Inc. v. Nike, Inc.*,
843 Fed. Appx. 291 (Fed. Cir. 2021) ................................................... 32

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
775 F.2d 1107 (Fed. Cir. 1985) (en banc) ........................................... 30

*Sunrace Roots Enter. Co., Ltd. v. SRAM Corp.*
336 F.3d 1298 (Fed Cir. 2003) ............................................................ 31

*Teleflex, Inc., v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002) ............................................... 15, 27, 31

*Terlep v. Brinkmann Corp.*,
418 F.3d 1379 (Fed. Cir. 2005) ........................................................... 37

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
789 F.3d 1335 (Fed. Cir. 2015) ........................................................... 33

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ................................................... passim

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
2003 U.S. Dist. LEXIS 13900 (N.D. Ill. Aug. 7, 2003) ....................... 28

**Statutes**

35 U.S.C. § 112 .......................................................................... passim

**Other Authorities**

Fed. R. App. P. 30(a)(2) ............................................................ 24

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), counsel for Appellee Amperex Technology Limited ("ATL") discloses that the following appeals in or from the same civil actions were previously before this Court:

- *In re: Amperex Technology Ltd*. (No. 2022-105): Petition for writ of mandamus denied January 14, 2022 in a per curiam order by Judges Lourie, Prost, and Taranto. *In re Amperex Tech. Ltd*., No. 2022-105, 2022 WL 135431 (Fed. Cir. Jan. 14, 2022).
- *Amperex Technology Limited v. Maxell, Ltd*. (No. 2022-1017): Appeal withdrawn following above-referenced denial of petition for writ of mandamus. *Amperex Tech. Ltd. v. Maxell, Ltd*., No. 2022-1017, 2022 WL 1021590 (Fed. Cir. Jan. 21, 2022).

Pursuant to Federal Circuit Rule 47.5(b), ATL discloses that the following cases will directly affect or be directly affected by this Court's disposition of this appeal:

- *Amperex Technology Limited v. Maxell, Ltd*., No. IPR2021-01441 (PTAB).
- *Zhuhai CosMx Battery Co., Ltd. v. Maxell, Ltd*., No. IPR2022- 00985 (PTAB).
- *Maxell, Ltd. v. Zhuhai CosMx Battery Co., Ltd*., No. 6:21-cv- 00845-ADA (W.D. Tex.).

Since the filing of this appeal, in IPR2021-01441 the PTAB held all claims of the '035 Patent invalid over prior art. Appx2387-2430 (final

written decision). An affirmance here would moot a potential Maxell appeal of the PTAB's decision.

Also since the filing of this appeal, the two listed cases involving Zhuhai CoxMX Battery Co., Ltd. have been resolved by settlement. They are listed here only because there are not yet final dismissals on their respective dockets.

Counsel for ATL is not aware of any other related cases within the meaning of Federal Circuit Rule 47.5.

## STATEMENT OF THE ISSUE

As Maxell admits, Claim 1 of the '035 Patent on the one hand states that $M^1$ "could be any one of [Co, Ni, Mn] alone, or any combination of those three metals," but on the other hand expressly requires $M^1$ to contain at least 30% cobalt. In light of this facial contradiction, did the district court correctly hold that Claim 1 (and therefore all other claims that depend on Claim 1) is indefinite?

# STATEMENT OF THE CASE

## I. Introduction

Under 35 U.S.C. § 112, ¶ 2, a patentee must describe his invention with sufficient particularity that the public will understand its metes and bounds.

As the court below found, Claim 1 of the ’035 Patent (the only independent claim) is indefinite because it recites a logical impossibility: on its face, the claim says that cobalt is both optional and required. A paradox by definition has no metes and bounds.

No amount of argument can overcome this fundamental problem with Maxell’s patent. Because the plain language of the patent is contradictory, the patentee failed to properly claim the invention of the ’035 Patent. The claims are indefinite and invalid.

## II. Background of the Dispute

Founded in 1999, Amperex Technology Limited (“ATL”) is the world’s leading innovator and (by some measures) largest manufacturer of lithium-ion batteries. Appx1345-1346, ¶¶ 23-24. By contrast, appellant Maxell. Ltd. no longer maintains a significant presence in the industry. *Id.*

In March 2020, Maxell contacted ATL and alleged that ATL’s

lithium-ion battery products infringe its U.S. Patent Nos. 8,691,446 ("'446 Patent"), 9,077,035 ("'035 Patent"), 9,166,251 ("'251 Patent"), and 9,350,019 ("'019 Patent") (collectively, the "Maxell LIB Patents"). *Id.* ¶25. The '446, '035, and '019 Patents date to 2006 and share the same specification. The '251 Patent shares much of the specification language of the other LIB Patents, but claims a 2007 priority date, is directed to a separator rather than a finished battery, and comes from a different inventive entity.

Despite a year of negotiations, Maxell could not accept that ATL products do not infringe the Maxell LIB Patents and therefore ATL filed a declaratory judgment action of non-infringement in New Jersey, Maxell's U.S. base of operations. Appx1341-1430 (*Amperex Tech. Ltd. v. Maxell, Ltd.*, D.N.J. Case No. Civ. 21-08461, ECF 1). Maxell countersued in the Western District of Texas, Appx1431-1565 (W.D. Tex. Case No. 6:21-cv-347-ADA), and after motion practice (and an unsuccessful mandamus petition), the cases were consolidated in Waco. See generally *Amperex Tech. Ltd. v. Maxell, Ltd.*, 2021 WL 4398804 (D.N.J. Sept. 27, 2021); *In re Amperex Tech. Ltd.*, No. 2022-105, 2022 WL 135431 (Fed. Cir. Jan. 14, 2022); Appx1996-1997.

## III. The District Court Held that Claim 1 of the '035 Patent is Invalid Because the Term at Issue is Indefinite

Following transfer and consolidation, the parties engaged in an extensive claim construction process in the Western District of Texas. The parties identified ten disputed claim terms for construction before the district court, many of them appearing across all four patents. In advance of the claim construction hearing, the court provided its preliminary claim constructions, including a finding that the '035 Patent was indefinite. The court gave Maxell ample opportunity to consider the preliminary finding of indefiniteness prior to the oral argument.

As the court below explained, the '446, '035, and '019 Patents "are all entitled 'Nonaqueous secondary battery and method of using the same,'" are "directed to similar technology[,] and share[] many of the same terms." Appx0027. "Each of these patents describes a lithium-ion battery whose positive electrode includes at least two lithium-containing transition metal oxides with different average particle sizes." *Id.* According to the (highly similar) specifications of each patent, using two lithium-containing transition metal oxides (LCTMOs) with different average particle sizes and different specific molar ratios of lithium, oxygen, and one or more transition metals "allows the battery

manufacturer to increase the number of lithium-containing transition metal oxides in the same volume, which allows for a more compact battery, as well as greater energy efficiency." *Id.*

In the '035 Patent, the formula for LCTMO (1) is $Li_xM^1_yM^2_zM^3_vO_2$. The claim states that "$M^1$ represents at least one transition metal element selected from Co, Ni and Mn" *and* "the content of Co in the transition metal $M^1$ ... is from 30% by mole to 100% by mole." Appx0138, Cl. 1. Maxell engages in subliminal messaging by conflating these phrases as a single "Cobalt Term." They are more properly the "$M^1$ Terms," which is how ATL will refer to them unless directly quoting Maxell. The contradiction is plain: if $M^1$ represents *at least one* transition metal element selected from the three alternatives Co, Ni and Mn, then $M^1$ could "select" only Co, Ni, or Mn, some combination of two of these three, or all three. But in several of these alternatives, the content of Co in the transition metal $M^1$ would be 0. Since the claim *also* requires that the content of Co in $M^1$ be from 30% by mole to 100% by mole, $M^1$ *cannot* represent "at least one" transition metal "selected from" Co, Ni and Mn. These two phrases cannot be aligned.

Maxell argued at claim construction that the $M^1$ Terms are definite

in light of the patent's file history. To support its position, Maxell presented the district court with twelve slides walking through the USPTO's office actions during the prosecution of the '035 Patent. It also submitted a declaration from its expert, Brett Lucht. Appx1778 (Lucht Dec. ¶ 72).

The district court disagreed. In its final claim construction order, the court held that the $M^1$ Terms in the '035 Patent are indefinite. Appx0068-72. It specifically summarized Maxell's prosecution argument before rejecting it, writing:

> Plaintiff contends that the prosecution history supports its position as Co was in the originally filed claims. Plaintiff then contends that Applicant amended the claim to create *Markush* group by adding Ni and Mn as additional elements and to require that Co is 30% to 100%. Plaintiff further contends that Applicant distinguished the pending claim from prior art by arguing that "Oda et al. JP '507 does not describe or teach such a content of Co, since Oda et al. JP '507 predominantly uses Ni as a transition metal."

Appx0069 (record citations omitted). But the trial court concluded that "there is clear-and-convincing evidence that a POSITA would not understand with 'reasonable certainty' what [the $M^1$ Terms] require[]." Appx0071. It found that "the first part of the claim recites a *Markush* group where Co is not necessarily required to be in the claimed compound

while the second part of the claim recites that Co is necessarily required. For an element to simultaneously be optional and required is a contradiction on its face." Appx0070.

The district court also rejected Maxell's interpretation that the claim "constitutes a *Markush* group wherein $M^1$ represents [1] Co, or [2] Co and at least one transition metal element selected from the group consisting of Ni and Mn." Appx0071. To the contrary: "[R]ather than describe two options where Co is part of both options, the claim ... recites a *Markush* group where there are up to seven options (Co, Ni, Mn, Ni & Mn, Co & Mn, Co & Ni, Co & Ni & Mn) where Co is only present in four of the seven options." *Id.*

The court below also disagreed that Claim 1 recites a broad limitation (*Markush* group) that is narrowed by another limitation (30%-100% Co). The court reasoned that "the first part of the claim recites a broad claim with seven options, but then the second part of the claim recites a narrowing limitation that does not apply to all options. In other words, the second part of the claim does not narrow the first part of the claim as it does not apply to some *Markush* group combinations." *Id.*

Reading the claim terms together and considering similar claim

language used in the related ’019 Patent, the district court found that Maxell knew exactly “how to draft a claim that allow[s] for two options, both of which could have included Co.” Appx0071-72. But “Plaintiff chose not to do so for this claim term, thus supporting the Court’s conclusion of indefiniteness.” *Id.*

This point alone warrants affirmance. If Maxell had intended that Co be a required element of $M^1$, it knew how to say so. In fact, it did so even within the $M^1$ Terms themselves. In Claim 1 of the ’035 Patent, Maxell defined the *second* transition metal in LCTMO (1) to require Mg: “$M^2$ represents *Mg and at least one metal element* selected from the group consisting of Ti, Zr, Ge, Nb, Al and Sn.” Appx0138, Cl. 1 (emphasis added). Similarly, the related ’019 and ’446 Patents say that “$M^2$ represents *Mg, or Mg and at least one metal element* selected from the group consisting of Ti, Zr, Ge, Nb, Al and Sn.” Appx1526 (’019 Patent, Cl. 1); Appx1506 (’446 Patent, Cl. 1) (emphasis added). Either of these formulations, applied to the $M^1$ Terms, would have made it clear to a POSITA that $M^1$ requires some amount of Co. But Maxell instead defined $M^1$ to be “at least one” of Co, Ni and Mn—a phrase inconsistent with the later stipulation that it requires 30%-100% Co.

On March 9, 2022, Maxell filed its Opposed Motion for Partial Reconsideration of the Court's Claim Construction Order or, Alternatively, Entry of Partial Final Judgment. *See* Appx0095 (district court docket; the motion for reconsideration is listed as ECF 79). In that motion, Maxell repeated the arguments it presented during claim construction. The trial court was unconvinced: "Having considered the Motion, defendant [ATL's] opposition ..., Maxell's reply ..., as well as the arguments of the parties at a hearing held on July 17, 2022, the Court declines to reconsider its claim construction order ... and finds that Maxell's request for partial reconsideration of the Order should be, and hereby is, **DENIED**." Appx0018. Consequently, the court granted summary judgment "[a]s all claims of the '035 Patent are indefinite…." Appx0019.

## IV. The PTAB Determined that All Claims of the '035 Patent Are Unpatentable

On September 23, 2021, ATL filed a petition for *inter partes* review of all claims of the '035 Patent. Appx2304-86 (IPR2021-01441). On January 10, 2023, the Patent Trial and Appeal Board ("PTAB") held oral arguments on this petition, as well as petitions challenging Maxell's other patents in suit. Given the relatedness of the patents, oral

arguments for the ’035, ’019, and ’446 Patents were consolidated in a single hearing.

On March 28, 2023, the PTAB issued a Final Written Decision determining that all challenged claims of the ’035 Patent are unpatentable over the cited prior art. Appx2387-2430 (final written decision). The PTAB also determined that all challenged claims of Maxell’s other patents in suit are invalid.

The PTAB’s final written decision provides an independent basis to affirm the judgment of invalidity. *Granite Mgmt. Corp. v. United States*, 416 F.3d 1373, 1378 (Fed. Cir. 2005) (“An appellee may rely upon any ground supported by the record for affirmance of the judgment, whether or not the lower court relied on that ground.”); *Banner v. United States*, 238 F.3d 1348, 1355 (Fed. Cir. 2001) (“An appellate court ‘may affirm the district court on a ground not selected by the district judge so long as the record fairly supports such an alternative disposition of the issue.’”).

## SUMMARY OF THE ARGUMENT

The Court should affirm the trial court's judgment that Claim 1—the only independent claim of the '035 Patent—is indefinite.

"In construing claims, ***the analytical focus must begin and remain centered on the language of the claims themselves***, for it is that language that the patentee chose to use 'to particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention.'" *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004) (internal quotation marks omitted and emphasis added). The court below correctly found, and Maxell admits, that the $M^1$ Terms in Claim 1 at once says that $M^1$ "could be any one of [Co, Ni, Mn] alone, or any combination of those three metals," but also expressly requires $M^1$ to contain at least 30% cobalt. Appellant's Br. (ECF 11) at 33-34; Appx0070-71; Appx1753 (Fuller Dec.) ¶¶ 49, 50.

This logical impossibility cannot possibly reflect what the applicants regarded as their invention. Faced with these contradictions, a POSITA is unable to determine what, exactly, are the parameters of $M^1$. Appx0071; Appx1753 (Fuller Dec. ¶¶49-50). The insoluble ambiguity of the $M^1$ Terms is further demonstrated by Maxell's own changing

position of what the $M^1$ Terms mean in its arguments before the district court and this Court.

If Maxell wanted to claim that $M^1$ represents Co alone or Co ***and*** some combination of Ni and Mn—instead of "*at least one* transition metal element *selected from* Co, Ni and Mn"—it knew exactly how to do so. For example, in claiming that the $M^2$ alloy requires Mg, the '035, '019, and '446 Patents all recite: "$M^2$ represents ***Mg and at least one metal element*** selected from" different options, which clearly requires Mg. Appx1526 ('019 Patent, Cl. 1); Appx1506 ('446 Patent, Cl. 1) (emphasis added). This Court's precedent instructs that different claim terms are presumed to have different meanings and Maxell has presented no persuasive evidence to rebut this presumption. "Where the meaning of a claim term is clear, as it is here, we do not rewrite the claim to preserve its validity." *Hill-Rom Servs. v. Stryker Corp.*, 755 F.3d 1367, 1374 (Fed. Cir. 2014).

Maxell argues (repeatedly) that the $M^1$ Terms define the "potential" components of $M^1$ without requiring that every possible combination is available. Appellant's Br. (ECF 11) at 11, 33, 44. Maxell's argument runs afoul of the tenet that the public is entitled to reasonable notice of the

asserted property interest—by requiring that the claims "particularly point out" and "distinctly claim" the invention. 35 U.S.C. § 112.

Maxell's "berry pie" analogy is misleading because it deliberately departs from the structure of the '035 Patent claims. *See* Appellant's Br. (ECF 11) at 4. An analogy that better fits the wording of the terms at issue would be: Suppose a recipe for "berry pie" said "(1) the filling is *at least one* fruit *selected from* blueberries, raspberries, and strawberries" and "(2) the content of blueberries in the filling is between 30% and 100%." Instead of understanding the recipe required blueberries, an ordinary speaker of English would likely push the recipe aside as confusing and contradictory.

Nothing in the intrinsic record indicates that the inventors have manifestly disclaimed or disavowed the full scope of the *Markush* group recited by Claim 1. The Court does not need to consider the specification or prosecution history because the parties on appeal do not dispute the plain and ordinary meaning of the $M^1$ Terms. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) (there is a "heavy presumption in favor of the ordinary meaning of claim language"). And the claim "frames and ultimately resolves all issues of claim

interpretation." *Teleflex, Inc., v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002).

Where, as here, the ordinary meaning of claim language as understood by a POSITA is readily apparent even to lay judges, claim construction involves little more than the application of the widely accepted meaning of commonly understood words. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). The fact that the patent's examples of $M^1$ all contain Co does not matter, because the specification particularly states that "the Examples do not limit the scope of the present invention." Appx0134 ('035 pat. at 21:37-38). Nor does the prosecution history contain "a clear disavowal of scope" that Maxell can rely on to rescue its claims.

Because Claim 1 fails in the basic task of explaining what is claimed, the Court should affirm that it is invalid under 35 U.S.C. § 112.

# ARGUMENT

## I. Standard of Review

This Court "review[s] the district court's ultimate conclusion of indefiniteness under 35 U.S.C. § 112 de novo." *Eon Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616, 620 (Fed. Cir. 2015). "Because the indefiniteness inquiry here is intertwined with claim construction," however, the Court reviews any "subsidiary factual determinations for clear error." *Id.* Thus, unless the Court has "a definite and firm conviction that a mistake has been committed," such "factual findings ... are not to be disturbed." *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1357 (Fed. Cir. 2006) (quotation omitted).

Under § 112 ¶ 2, "first, [the claim] must set forth what the applicant regards as his invention and second, it must do so with sufficient particularity and distinctness, i.e., the claim must be sufficiently definite." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002) (internal quotation marks omitted).

The patentee has the burden to claim an invention with sufficient particularity and precision to "inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514

F.3d 1244, 1249 (Fed. Cir. 2008). Where a patentee has failed to claim his invention with sufficient precision for "one skilled in the art [to] understand the bounds of the claim," the claim is indefinite and must be declared invalid." *Allen Eng'g Corp.*, 299 F.3d at 1348.

## II. The $M^1$ Terms Contain A Contradiction That Renders Claim 1 Indefinite

Claim 1 of the '035 Patent is the patent's only independent claim. It contains two different statements concerning how much cobalt is required in the transition metal labeled "$M^1$" (part of a formula for the lithium-containing transition metal oxides in the claimed battery's cathode). In the first portion of the claim defining $M^1$ in formulas (1) and (2), the '035 Patent states that "$M^1$ represents at least one transition metal element selected from Co, Ni and Mn." Appx0138, Cl. 1. In the second portion of the claim defining $M^1$ in formulas (1) and (2), the '035 Patent states that "the content of Co in the transition metal $M^1$ of the formulae (1) and (2) is from 30% by mole to 100% by mole." *Id.* The district court correctly held that this contradiction in the $M^1$ Terms renders the claim indefinite. Appx0070.

The most important source of intrinsic evidence is the language of the claims because a patent's claims define the scope of the patentee's

right to exclude. *See Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010) ("Because the claims perform the fundamental function of delineating the scope of the invention, the purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude."); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("words of the claims themselves ... define the scope of the patented invention"); *Phillips*, 415 F.3d at 1312 ("the Supreme Court made clear that the claims are of primary importance, in the effort to ascertain precisely what it is that is patented") (internal quotation marks omitted); *Golight,* 355 F.3d at 1331.

Sometimes, the ordinary meaning of claim language as understood by a POSITA will be so apparent from the claim language itself that no further inquiry is needed. *Phillips*, 415 F.3d at 1314 ("the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."). Despite the ink spilled by

Maxell on this issue, the parties do not dispute the plain and ordinary meaning of the $M^1$ Terms, which plainly recite a logical impossibility that renders Claim 1 indefinite.

On the one hand, the $M^1$ Terms expressly state that Co is ***optional*** in $M^1$. Indeed, Maxell does not dispute in its opening brief that at least when "looking at each part of the Cobalt Term in isolation ... the District Court's description would not be wrong": "The first part of the claim recites a *Markush* group where Co is not necessarily required to be in the claimed compound." Appellant's Br. (ECF 11) at 33. The practitioner of the '035 Patent can select any one, two, or three of Co, Ni, and Mn. As Maxell concedes, "[i]f the claim ended there, ***$M^1$ could be any one of those metals alone, or any combination of those three metals***." *Id.* (emphasis added); *see* Appx1753 (Fuller Dec.) ¶ 49 ("$M^1$ can be cobalt, or nickel, or manganese, or any combination thereof. It can, for example, be entirely nickel or a nickel-manganese alloy. In other words, the presence of cobalt is optional."); *see also Ex parte Markush*, 1925 Dec. Comm'r Pat. 126, 127 (1924) ("where no generic expression exists by which a group of alternative elements can be claimed, applicants are permitted to recite the elements in the alternative").

On the other hand, it is undisputed that the $M^1$ Terms *also* expressly require $M^1$ to contain at least 30% cobalt. Appellant's Br. (ECF 11) at 33-34; Appx1753 (Fuller Dec. ¶ 50) ("But in the second part of the phrase, the patent indicates that cobalt must be between 30% and 100% of $M^1$").

It is impossible for cobalt to be simultaneously "optional" and "required" in $M^1$. As Dr. Fuller (a POSITA) opined (*id.*):

> This is an irreconcilable contradiction: if $M^1$ must contain 30%-100% cobalt, then it cannot be entirely nickel or manganese, despite the claim saying plainly that $M^1$ can be entirely nickel or manganese. Even multiple cobalt-containing alloys that are manifestly within the phrase "selected from Co, Ni and Mn"—for example, 20% Co, 40% Ni, and 40% Mn—are excluded by the later limitation that "the content of Co" in $M^1$ "is from 30% by mole to 100% by mole."

The logical impossibility recited on the face of Claim 1's $M^1$ Terms runs afoul of the definiteness requirement both subjectively and objectively.

***Subjectively***, the claim cannot possibly reflect what the applicants regarded as their invention. Even taking Maxell's assertion at face value—that the applicants intended their invention to include the transition metal $M^1$ containing at least 30% cobalt—the first sentence in the $M^1$ Terms certainly claims a range of "selected" $M^1$ combinations

much broader than what the applicants had subjectively intended. And Maxell admits the *Markush* phrase in the $M^1$ Terms claims "any one of [Co, Ni, Mn] alone, or any combination of those three metals." Appellant's Br. (ECF 11) at 33.

This Court in *Allen Engineering* found a claim indefinite where "the invention set forth in a claim is not what the patentee regarded as his invention." *Allen Eng'g Corp.*, 299 F.3d at 1349. There, the applicant drafted a claim that required the gearbox to pivot in the perpendicular direction while the intended invention disallows the gearbox to pivot in the perpendicular plane. *Id.* This type of disconnect is even clearer here because the logical impossibility is present on the face of the same claim.

***Objectively***, the claim cannot possibly define the metes and bounds of the invention because it contains an inherent logical contradiction and hence is "insolubly ambiguous." A claim that is "insolubly ambiguous" is indefinite as a matter of law. *Halliburton Energy Servs.*, 514 F.3d at 1249. "Faced with these contradictions, a POSITA is unable to determine what, exactly, are the parameters of $M^1$." Appx1753 (Fuller Dec. ¶ 50). When a patentee fails in the basic task of explaining what is claimed, the Court should properly conclude that the claims are invalid under 35

U.S.C. § 112. *Halliburton Energy Servs.*, 514 F.3d at 1249.

Contrary to Maxell's argument, this case is no different from *Multilayer*, where this Court held a dependent claim to be indefinite because it included an element that its independent claim excluded. *See Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1362 (Fed. Cir. 2016) ("Independent claim 1 excludes LDPE from the inner layers, while dependent claim 10 includes it. As such, claim 10 is inconsistent with claim 1 and, indeed, contradicts claim 1. A dependent claim that contradicts, rather than narrows, the claim from which it depends is invalid"). A facial contradiction means that a POSITA cannot determine the patent's metes and bounds.

Both subjectively and objectively, Claim 1 is invalid.

## III. Maxell's Changing Position Regarding What the $M^1$ Terms Mean Highlights the Indefiniteness of the Underlying Claim

Maxell's inability to decide what its claim means is telling. From Maxell's lips, either $M^1$ "constitutes a *Markush* group wherein $M^1$ represents Co, or Co and at least one transition metal element selected from the group consisting of Ni and Mn" (Appx0069) and the 30%-100% Co language "simply confirms that the presence of Co is required" (*id.*) ***or*** the *Markush* group $M^1$ "could be any one of those metals alone, or any

combination of those three metals" (Appellant's Br. (ECF 11) at 33) but the 30-100% Co language "narrows the composition of $M^1$ from the broader first part." *Id.* From the trial court to here, Maxell went from ***(1)*** arguing the first half of the $M^1$ Terms (the *Markush* language) requires Co, something the second half (the percentage of Co) merely confirms, to ***(2)*** treating the second half of the $M^1$ Terms (the percentage) as modifying the first (*Markush*) half, such that while the *Markush* grouping does not require Co the percentage clause does. To elaborate:

1. Maxell initially argued to the trial court that the *Markush* claim in the $M^1$ Terms ***requires*** the presence of cobalt and the later limitation of 30%-100% cobalt simply confirms it. As the district court put it,

> In its response, Plaintiff contends that the first part of the claim "constitutes a *Markush* group wherein $M^1$ represents Co, or Co and at least one transition metal element selected from the group consisting of Ni and Mn." ... Plaintiff contends that the second part of the claim "simply confirms that the presence of Co is required."

Appx0069. The court rejected Maxell's argument, noting that "rather than describe two options where Co is part of both options, the claim … recites a *Markush* group where there are up to seven options (Co, Ni, Mn, Ni & Mn, Co & Mn, Co & Ni, Co & Ni & Mn) where Co is only present in four of the seven options." Appx0071. This meant that "Plaintiff's

assertion that Co is necessarily present in the claimed compound is incorrect, which means that aforementioned contradictions exists." *Id.*

2. After the trial court rejected its initial argument during claim construction, Maxell took a different tack. In its motion for reconsideration, Maxell argued that:

> The first part establishes the *potential* metals that can form $M^1$: cobalt, nickel, and manganese. And if the claim ended there, $M^1$ could be any one of those three metals alone, or any combination of those three metals. But the claim does not end there; the second part of the term states that cobalt must be present in $M^1$ in an amount of 30% to 100% by mole. The language of the second part is mandatory, not optional. It clearly and unmistakably narrows the scope of the claim by requiring the presence of cobalt, such that $M^1$ can be cobalt alone, or a combination of cobalt with nickel and/or manganese, provided that the proportion of cobalt is at least 30%.

No. 6:21-cv-00347-ADA, ECF 79 at 5 (listed at Appx0095) (emphasis added)[1]; *see also* Appx2254-61 at 6:18-7:1 ("the first portion of the limitation starting with 'M1 represents' establishes the potential metals that can form M1, so that's cobalt, nickel and manganese. And it's the second portion of the term which states that cobalt must be present in M1 in an amount of 30 percent to 100 percent by mole. And that language

[1] "Parts of the record may be relied on by the court or the parties even though not included in the appendix." Fed. R. App. P. 30(a)(2).

in the second portion is mandatory. It clearly and unmistakably narrows the scope of the claim by requiring the presence of cobalt"). The trial court rejected this argument, too. Appx2271; Appx0018-20.

3. On appeal, Maxell repeats almost verbatim its second argument to the district court. But it never explains why it abandoned the initial claim construction position it took in the court below: the *Markush* group $M^1$, instead of requiring Co, "could be any one of those metals alone, or any combination of those three metals." Appellant's Br. (ECF 11) at 33. And the 30%-100% cobalt limitation, instead of "'simply confirm[ing] that the presence of Co is required [by the preceding *Markush* group]," now "narrows the composition of $M^1$ from the broader first part." *Id.*

The inconsistency of Maxell's arguments highlights the indefiniteness of the underlying claim.

## IV. Maxell Fails to "Reconcile" the Contradictory Requirements

To walk back its admission that the *Markush* language covers "any combination of those three metals," Maxell now argues that the *Markush* claim simply defines the "possible" or "potential" components of $M^1$ but does not require "every possible combination of those elements ... [to] be available." Appellant's Br. (ECF 11) at 15, 33, 36. According to Maxell,

"nothing in the first part of the term requires that $M^1$ can be just nickel, just manganese, or just combination of nickel and manganese, regardless of the remaining limitations." *Id.* at 37; *see also id.* at 26 ("the first part of the term does not ***require*** that the elemental combination for $M^1$ must include combinations without cobalt") (emphasis original). But it makes no sense to say that $M^1$ can be "selected from" Co, Ni, and Mn only to turn around and say that certain of those "selections" are not allowed after all. Arguing that the term does not require the *absence* of cobalt misses the point, which is that it does not require the *presence* of cobalt. The phrase "*at least one* transition metal element *selected from* Co, Ni and Mn" means exactly that: if the options are Co, Ni, and Mn, and $M^1$ has to be "selected from" "*at least* one" of those options, then by the dictates of English, $M^1$ can be Ni, or Mn, or a combination of Ni and Mn.

Maxell faults the district court for refusing to read the two parts of the $M^1$ Terms together. But the court below *did* read the two phrases together. And it found them contradictory, which is why it found the claim indefinite. The "remaining limitations" cannot change the phrase "at least one" to instead mean "cobalt alone or cobalt and at least one …," regardless of what Maxell's inventors may have intended. *Vitronics*

*Corp.*, 90 F.3d at 1584 ("Nor may the inventor's subjective intent as to claim scope, when unexpressed in the patent documents, have any effect. Such testimony cannot guide the court to a proper interpretation when the patent documents themselves do so clearly").

## V. Intrinsic and Extrinsic Evidence Does Not Support Maxell

Nothing in the intrinsic or extrinsic record suggests that the inventors manifestly disclaimed or disavowed the full scope of the *Markush* group (Co, Ni, and/or Mn). This Court has long held that "claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record ***using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope***." *Teleflex, Inc.*, 299 F.3d at 1327 (emphasis added).

The use of extrinsic evidence is even more limited. Extrinsic evidence may be admissible to show, for example, that a particular claim term has a specialized meaning in the applicable art, but "extrinsic evidence ... may not be used to vary or contradict the claim language."

*Vitronics Corp.,* 90 F.3d at 1584. "Extrinsic evidence should only be used by the court if the intrinsic evidence alone does not resolve any ambiguity in a disputed claim term." *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 2003 U.S. Dist. LEXIS 13900, at *5 (N.D. Ill. Aug. 7, 2003) (citing *Vitronics Corp.*, 90 F.3d at 1583-84). Here. there is no ambiguity—just recriminations about the fact that the claim's plain meaning extinguishes Maxell's claim for damages.

**A. The court correctly rejected Maxell's arguments--twice**

Maxell incorrectly asserts that "the District Court did not consider the '035 Patent's specification and prosecution history in its analysis of the Cobalt Term." Appellant's Br. (ECF 11) at 5. Not so. Maxell's arguments regarding the '035 Patent's specification and prosecution history were presented to the district court twice, along with the testimony of its expert, Dr. Lucht. Appx0094 at ECF 52 (Maxell Claim Construction Br.) and ECF 79 (Maxell Mot. for Reconsideration); Appx2206-2221 at 56:13-61:17 (Maxell's oral argument during *Markman* hearing that "ATL's briefing also entirely ignores the specification and the prosecution history …"); Appx2254-61 at 6:9-13:18 (Maxell's oral argument regarding its Motion for Reconsideration requesting the trial

court to "reconsider its holding based on the claim language, the specification and the prosecution history"). And the district court rejected them twice. Appx0068-72 (*Markman* Order on Term #8); Appx0018-20 (Order Denying Reconsideration). The fact that the district court was not long detained by those arguments does not mean it overlooked them.

### B. The specification cannot rescue Maxell's claim

Maxell argues that the specification would guide a POSITA to the conclusion that $M^1$ "must" contain cobalt. Appellant's Br. (ECF 11) at 15-16. "To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Phillips*, 415 F.3d at 1323.

The fact that the preferred embodiments in the specification contain cobalt is not nearly enough. To begin with, the parties do not dispute the plain and ordinary meaning of the $M^1$ Terms—which is, moreover, the claim construction *proposed by Maxell.* Appx2148 ("Maxell's Proposed Construction: No construction necessary; Plain and ordinary meaning").

Worse (for Maxell), the patent itself contradicts Maxell's argument. Maxell says that the court below did not give enough weight to the preferred embodiments in the '035 Patent, all of which include Co. Appellant's Br. (ECF 11) at 6, 15-16, 44. But the '035 Patent says expressly that "***the Examples do not limit the scope of the present invention***." Appx0134 at 21:37-38 (emphasis added). Try as it might, Maxell cannot escape the plain language of its own patent.

Besides, while a court may look to the specification to *interpret* a claim, "limitations from the specification are not to be read into the claims ... for ***it is the claims that measure the invention***." *Golight, Inc.*, 355 F.3d at 1331 (internal quotation marks and citations omitted; emphasis added). The specification is not a substitute for claim terms "particularly pointing out and distinctly claiming" the invention. 35 U.S.C. § 112 (b). The language of the specification is not a check or corrective on the plain meaning of the claim. "***Specifications teach. Claims claim***." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 n.14 (Fed. Cir. 1985) (en banc) (emphasis added).

And so the mere fact that the *non-limiting* examples in the '035 Patent all contain Co would not inform a POSITA that $M^1$ *must* contain

Co despite the claim's statement that "$M^1$ represents ***at least one*** transition metal ***element selected from*** Co, Ni and Mn." *See Teleflex*, 299 F.3d at 1327 ("the number of embodiments disclosed in the specification is not determinative of the meaning of disputed claim terms"); *Halliburton Energy*, 514 F.3d at 1249 ("The common thread in all of these cases is that claims were held indefinite only where a person of ordinary skill in the art could not determine the bounds of the claims") (collecting cases).

### C. The prosecution history cannot rescue Maxell's claim

Nor can Maxell overcome the facial contradiction in Claim 1 by pointing to language from the prosecution history. This Court "indulge[s] a 'heavy presumption' that a claim term carries its ordinary and customary meaning." *Golight, Inc.*, 355 F.3d at 1332. T]he prosecution history may not be used to infer the intentional narrowing of a claim absent the applicant's clear disavowal of claim coverage. To be given effect, such a disclaimer must be clear and unmistakable." *Sunrace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1306 (Fed Cir. 2003) (internal citations and quotation marks omitted).

If anything, the file history cuts against Maxell's position here.

Accepting Maxell's narrative, Maxell originally claimed $M^1$ to be "at least one transition metal element selected from Co, Ni and Mn." Appx0214. Then, Maxell told the PTO that "$M^1$ is … CO." Appx0517. Still later, it restored the claim language that "$M^1$ represents at least one transition metal element selected from Co, Ni and Mn" and added the clause "wherein the content of Co in the transition metal $M^1$ is 30% by mole or more." Appx1272-73. At no point did anyone comment on the obvious contradiction the third amendment introduced. And while this may show a patentee trying to persuade the PTO to grant broader claims or to avoid denial based on prior art, it does not demonstrate that the inventor was, "clear[ly] and unmistakabl[y]," trying to disavow *both* lithium-containing transition metal oxides (LCTMOs) whose $M^1$ contained some combination of Mn and Ni but no Co *as well as* LCTMOs with less than 30% Co. *Saso Golf, Inc. v. Nike, Inc.*, 843 Fed. Appx. 291, 297 (Fed. Cir. 2021) (applying *Nautilus* and upholding district court's finding of indefiniteness due to lack of clarity in the term, and therefore "too indefinite to be valid").

Moreover, if a court considers a patent's file history, it should consider the *entire* file history of the patent family. "A statement made during prosecution of related patents may be properly considered in

construing a term common to those patents." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1343 (Fed. Cir. 2015). And Maxell never grapples with the fact that the file history of both the '035 Patent specifically and the '446 Patent family more broadly includes *multiple* claims where the patentee *does* unambiguously define an LCTMO as containing "Mg and at least one metal element selected from the group consisting of Ti, Zr, Ge, Nb, Al and Sn" (Appx0138, Cl.1) or Mg, or Mg and at least one metal element selected from the group consisting of Ti, Zr, Ge, Nb, Al and Sn." Appx1526 ('019 Patent, Cl. 1); Appx1506 ('446 Patent, Cl. 1). Maxell never explains why the same inventors clearly expressed when *Mg* was required in $M^2$ but left a POSITA to dig through the file history to determine that, in the '035 Patent, $M^1$ required Co, as well.

The fact that the applicants added the limitations previously deleted demonstrate the clear intent to claim the full scope allowed under the claim language. Maxell has not and cannot point to any statement that rises to the level of a clear disavowal of scope with respect the pending claim 1. *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1326-27 (Fed. Cir. 2001) (refusing to rely on ambiguity surrounding

examiner's silence or patentee's lack of argument during prosecution to construe claim term).

### D. Extrinsic evidence cannot rescue Maxell's claim

Lastly, Maxell tries to counter the plain and ordinary meaning of the $M^1$ Terms by introducing a declaration from its expert witness, Dr. Lucht. Appx1762 (Lucht Dec. ¶ 72). But extrinsic evidence may only be used to aid the Court in understanding patent claims, and cannot be relied upon to justify any departure from or contradiction of the actual claim language employed by the applicants as in this case. *Vitronics Corp.,* 90 F.3d at 1584. Unsurprisingly, ATL's expert takes a different view of the meaning of the $M^1$ Terms. Appx0070-71; Appx1753 (Fuller Dec. ¶¶ 49-51). To the extent that these dueling expert opinions create an issue of fact, the Court reviews those "subsidiary factual determinations for clear error." *Eon Corp.*, 785 F.3d at 620. Maxell mentions but never applies this legal standard, *see* Appellant's Br. (ECF 11) at 29, and certainly does not demonstrate "that a mistake has been committed," *Flex-Rest*, 455 F.3d at 1357, merely because the trial court read the $M^1$ Terms in plain English.

## VI. Had Maxell Wanted to Draft A Claim That Required Cobalt, It Knew How To

At the risk of repetition, none of Maxell's arguments overcome the basic problem on the face of its claim. Compare how Claim 1 of the '035 Patent describes $M^1$ and $M^2$:

- "$M^1$ represents at least one transition metal element selected from Co, Ni and Mn"
- "$M^2$ represents Mg and at least one metal element selected from the group consisting of Ti, Zr, Ge, Nb, Al and Sn"

Appx0138, Cl.1. If Maxell wanted to claim that $M^1$ requires Co and merely permits Ni and Mn, it knew exactly how to do so, because it expressly required Mg in the composition of $M^2$ ***in the very same claim***. "Differences among claims can ... be a useful guide in understanding the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. "[O]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Id*. Federal Circuit "precedent instructs that different claim terms are presumed to have different meanings." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) (citations and quotation marks omitted). Thus, "at least one transition metal

element selected from …" is presumed to mean something different from "[a transition metal element] ***and*** at least one metal element selected from … ." "[T]he use of two terms in a claim ***requires*** that they connote different meanings." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) (emphasis added).

For further support, the Court needs look no further than how the inventors described $M^1$ ***and*** $M^2$ in the '019 and '446 Patents. These patents share a similar (if not identical) specification and have an inventor (Fusaji Kita) in common. Appx1526 ('019 Patent, Cl. 1); Appx1506 ('446 Patent, Cl. 1). Claims from related patents are useful in determining the meaning of claim terms. *See*, *e.g.*, *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("we presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning"). In the '019 and '446 Patents, too, "$M^1$ represents at least one transition metal element selected from Co, Ni and Mn," but "$M^2$ represents Mg, or Mg and at least one metal element selected from the group consisting of Ti, Zr, Ge, Nb, Al and Sn." Appx1526 ('019 Patent, Cl. 1); Appx1506 ('446 Patent, Cl. 1). Either formulation informs a POSITA that Mg was required as part of

$M^2$. Indeed, a comparison of the claims in the ’446 patent family shows that the inventor was capable of making fine distinctions: the ’035 Patent describes $M^2$ as representing “Mg and at least one metal element,” while the ’019 and ’446 Patents describe $M^2$ as representing “Mg, or Mg and at least one metal element”—indicating that $M^2$ must be a combination of Mg and another element in the ’035 Patent but can be Mg alone in the ’019 and ’446 Patents. If the ’035 Patent inventors wanted to ensure that Co was part of $M^1$, they knew exactly how to say so.

## CONCLUSION

Courts construe claims with the goal of “elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims.” *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005). Importantly, a court may not “re-write claims to preserve their validity” even if it is plain that the inventors did not mean what they wrote. For example, in *Allen Eng’g Corp.*, this Court addressed the issue of whether a court should redraft the claims to correct an obvious error. But the Court refused, because “[i]t is not our function to rewrite claims to preserve their validity.” 299 F.3d at 1349. “[I]t is of no moment that the contradiction is obvious: semantic

indefiniteness of claims 'is not rendered unobjectionable merely because it *could* have been corrected.'" *Id.* (emphasis original).

This Court cannot ignore the plain meaning of the '035 Patent's claims in order to preserve Maxell's lawsuit. ATL respectfully requests that the Court affirm the district court's decision that the '035 Patent is invalid for indefiniteness.

Dated: April 11, 2023

Respectfully submitted,

*/s/ Harold Davis*

Harold H. Davis Jr.
Email: Hal.Davis@gtlaw.com
David S. Bloch
Email: blochd@gtlaw.com
**GREENBERG TRAURIG LLP**
101 Second Street, Suite 2200
San Francisco, CA 94105
(415) 655-1300 Telephone
(415) 707-2010 Facsimile

Yang Liu
Email: Yang.Liu@gtlaw.com
**GREENBERG TRAURIG LLP**
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508

**Counsel for Defendant-Appellee Amperex Technology Limited**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1). The brief contains 7,485 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

Date: April 11, 2023

*/s/ Harold Davis*
*Harold H. Davis Jr.*
*Email: Hal.Davis@gtlaw.com*
***GREENBERG TRAURIG LLP***
*101 Second Street, Suite 2200*
*San Francisco, CA 94105*
*(415) 655-1300 Telephone*
*(415) 707-2010 Facsimile*

**Counsel for Defendant-Appellee Amperex Technology Limited**

## CERTIFICATE OF SERVICE

In accordance with Federal Rule of Appellate Procedure 25 and Federal Circuit Rule 25, I certify that on April 11, 2023, I caused a copy of the foregoing brief to be served electronically on all registered counsel through the Court's CM/ECF system.

*/s/ Harold Davis*
*Harold H. Davis Jr.*
*Email: Hal.Davis@gtlaw.com*
***GREENBERG TRAURIG LLP***
*101 Second Street, Suite 2200*
*San Francisco, CA 94105*
*(415) 655-1300 Telephone*
*(415) 707-2010 Facsimile*

**Counsel for Defendant-Appellee Amperex Technology Limited**