No. 2023-1194

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

MAXELL, LTD.,
*Plaintiff-Appellant*

v.

AMPEREX TECHNOLOGY LIMITED,
*Defendant-Appellee*

*Appeal from the United States District Court for the Western District of Texas, Case Nos. 6:21-cv-347-ADA, 6:21-cv-1007-ADA, Judge Alan D. Albright*

# REPLY BRIEF OF PLAINTIFF-APPELLANT MAXELL, LTD.

Eric J. Klein
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
214.220.7700 Telephone
214.220.7716 Facsimile
Email: eklein@velaw.com

Hilary L. Preston, *Lead Counsel*
Jeffrey T. Han
Erik Shallman
Corbin J. Cessna
VINSON & ELKINS LLP
200 W. 6th Street, Suite 2500
Austin, TX 78701
512.542.8400 Telephone
512.542.8612 Facsimile
Email: hpreston@velaw.com
Email: jhan@velaw.com
Email: eshallman@velaw.com
Email: ccessna@velaw.com

*Counsel for Plaintiff-Appellant Maxell, Ltd.*

April 21, 2023

# TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 4

I. ATL Applies an Incorrect Legal Framework. ........ 4

II. The Cobalt Term Does Not Contain a Contradiction and Informs a POSITA that Cobalt Is Required. ........ 6

A. The Two Parts of the Cobalt Term Must Be Read Together, such that the Second Part Narrows the First Part by Requiring Cobalt in $M^1$. ........ 7

B. A POSITA Can Easily Determine the Bounds of the Claimed Invention Based on Whether the Two Parts of the Cobalt Term Are Both Satisfied. ........ 10

III. Maxell Has Consistently Argued that the Two Parts of the Cobalt Term Must Be Read Together. ........ 12

IV. The Specification and Prosecution History Support the Necessary Presence of Cobalt in $M^1$. ........ 14

A. ATL's Improper Application of the "Disavowal" Test Contradicts Controlling Precedent on the Need to Read the Cobalt Term in Light of the Specification and Prosecution History ........ 14

B. The Specification Supports the Cobalt Term's Requirement for Cobalt in $M^1$. ........ 16

C. The Prosecution History Supports the Cobalt Term's Requirement for Cobalt in $M^1$. ........ 17

V. The Separate IPR Proceedings Demonstrate Both ATL's and the PTAB's Ability to Determine the Scope of the Cobalt Term. ....................21

CONCLUSION ....................25

# TABLE OF AUTHORITIES

## Cases

*BASF Corp. v. Johnson Matthey Inc.*,
875 F.3d 1360 (Fed. Cir. 2017) .......... 6

*DeMarini Sports, Inc. v. Worth, Inc.*,
239 F.3d 1314 (Fed. Cir. 2001) .......... 6

*Emerson Elec. Co. v. SIPCO, LLC*,
826 F. App'x 904 (Fed. Cir. 2020) .......... 10

*Fox Factory, Inc. v. SRAM, LLC*,
944 F.3d 1366 (Fed. Cir. 2019) .......... 22

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
355 F.3d 1327 (Fed. Cir. 2004) .......... 6

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) .......... 6

*Ironburg Inventions Ltd. v. Valve Corp.*,
--- F.4th ----, No. 2021-2296, 2023 WL 2749199
(Fed. Cir. Apr. 3, 2023) .......... 3

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
175 F.3d 985 (Fed. Cir. 1999) .......... 6

*Kao Corp. v. Unilever U.S., Inc.*,
441 F.3d 963 (Fed. Cir. 2006) .......... 22

*Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*,
831 F.3d 1350 (Fed. Cir. 2016) .......... 9

*Nature Simulation Sys. Inc. v. Autodesk, Inc.*,
50 F.4th 1358 (Fed. Cir. 2022 .......... 14

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014) ........................................................ passim

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
844 F.3d 1370 (Fed. Cir. 2017) ........................................ 1, 6, 23

*Spigen Korea Co. v. Ultraproof, Inc.*,
955 F.3d 1379 (Fed. Cir. 2020) .............................................. 22

*Sunrace Roots Enter. Co., Ltd. v. SRAM Corp.*,
336 F.3d 1298 (Fed Cir. 2003) ................................................. 6

*Tinnus Enters., LLC v. Telebrands Corp.*,
733 F. App'x 1011 (Fed. Cir. 2018) ....................................... 6, 8

*TriMed, Inc. v. Stryker Corp.*,
608 F.3d 1333 (Fed. Cir. 2010) .............................................. 22

# INTRODUCTION

ATL has the burden to show that the Cobalt Term is indefinite, which "must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017). In both the District Court and here in its Response Brief ("Resp. Br."), ATL has failed to carry that burden. Instead, ATL focuses in its Response on a legal framework that does not apply (disavowal of claim scope in the context of claim construction), ignores Supreme Court precedent (mandating review of the full intrinsic record), and even goes so far as to suggest that the Federal Circuit could affirm the District Court's judgment based on a Patent Trial and Appeal Board ("PTAB") decision that is not before the Court in this appeal.

Maxell explained in its Opening Brief that the first part of the Cobalt Term—"$M^1$ represents at least one transition metal element selected from Co, Ni and Mn"—merely provides a list of the potential metals that can form $M^1$. The first part of the term is in turn narrowed by the second part of the term, which requires $M^1$ to have at least 30% cobalt. Contrary to ATL's arguments, the two parts of the Cobalt Term are not contradictory and can be reconciled simply by having at least 30% cobalt in $M^1$.

ATL's Response also continues to ignore the Supreme Court's directive that the entire intrinsic record must be considered in determining the meaning of the Cobalt Term. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). Indeed, ATL directly contradicts that controlling precedent by stating that "[t]he Court does not need to consider the specification or prosecution history." Resp. Br. 14. But ATL's arguments concerning use of the intrinsic record only to find disavowal of claim scope are inapposite here because the issue of indefiniteness involves a different analytical framework than the one applicable to general claim construction on which ATL relies. *See id.* at 14, 31, 33. In analyzing whether the Cobalt Term is indefinite, the Supreme Court and Federal Circuit's well-established precedent requires consideration of the specification and prosecution history, both of which provide strong support for the Cobalt Term requiring cobalt in $M^1$.

The District Court misconstrued the Cobalt Term to have a contradiction where there is none and incorrectly held the term indefinite as a result. ATL has failed to show otherwise. Because the District Court granted judgment in ATL's favor based on its erroneous holding that the Cobalt Term is indefinite, Maxell respectfully requests that the Federal

Circuit vacate the District Court's judgment, reverse the holding of indefiniteness, and remand for further proceedings. As the language of the Cobalt Term is clear, the term should be given its plain and ordinary meaning.[1]

---

[1] *See, e.g.*, *Ironburg Inventions Ltd. v. Valve Corp.*, --- F.4th ----, No. 2021-2296, 2023 WL 2749199, at *4 (Fed. Cir. Apr. 3, 2023) (agreeing that claim term was not indefinite and giving the term its plain and ordinary meaning because it did not require additional construction).

## ARGUMENT

### I. ATL Applies an Incorrect Legal Framework.

Throughout its Response, ATL applies the incorrect legal framework regarding disavowal of claim scope. *See* Resp. Br. 14-15, 27, 31-33. ATL's reliance on this general principle of claim construction is misplaced in this appeal concerning whether the Cobalt Term is indefinite. This appeal does not concern a disputed claim construction involving potential disavowal of scope. Rather, the indefiniteness issue here has its own legal framework established by the Supreme Court, which asks whether the Cobalt Term, viewed in light of the specification and prosecution history, allows a POSITA to determine with reasonable certainty the scope of the claim. *Nautilus*, 572 U.S. at 910. ATL ignores this standard and does not even cite *Nautilus* once in its Response.

ATL first incorrectly argues that, in the absence of a demonstrated disavowal, the full scope of the first part of the Cobalt Term—"$M^1$ represents at least one transition metal element selected from Co, Ni and Mn"—must be within the scope of the claim as a whole and that $M^1$ must allow for combinations of elements without at least 30% cobalt. *See, e.g.*, Resp. Br. 14, 27. But the Court is not tasked with determining whether

that limitation, standing alone, should have a narrower scope through disclaimer or disavowal in the intrinsic record. The Court instead must look at the first part of the Cobalt Term together with the second part, which narrows the scope of $M^1$ by requiring at least 30% cobalt, and consider whether a POSITA would understand with reasonable certainty that the term requires cobalt—which it does. Disavowal is unnecessary as a separate narrowing limitation is in the claim itself.

In addition, relying on the incorrect "disavowal" framework, ATL disregards controlling Supreme Court precedent when it argues that "[t]he Court does not need to consider the specification or prosecution history because the parties on appeal do not dispute the plain and ordinary meaning of the $M^1$ Terms." Resp. Br. 14. Well-established Supreme Court and Federal Circuit precedent hold that when evaluating claims for indefiniteness, those claims ***must*** be "viewed in light of the specification and prosecution history." *Nautilus*, 572 U.S. at 910. And as discussed in Maxell's Opening Brief and below, both intrinsic sources support the Cobalt Term's requirement of at least 30% cobalt in $M^1$. *See* Opening Br. 43-53.

Thus, ATL's arguments discussing the rule for construing claim terms based on disavowal of claim scope are simply inapplicable here. The issue presented is whether the Cobalt Term is indefinite, and not one of ATL's cited cases on disavowal involves an indefiniteness analysis.[2] The intrinsic record cannot be simply ignored as ATL advocates.

## II. The Cobalt Term Does Not Contain a Contradiction and Informs a POSITA that Cobalt Is Required.

As explained in Maxell's Opening Brief, when read in its entirety, as required, *Tinnus Enters., LLC v. Telebrands Corp.*, 733 F. App'x 1011, 1018 (Fed. Cir. 2018), a POSITA would understand that the Cobalt Term clearly requires the element cobalt to be included in M[1]. Opening Br. 32-43. ATL has the burden of proving by clear and convincing evidence that the Cobalt Term is indefinite. *See BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017); *Sonix*, 844 F.3d at 1377. It has failed to carry that burden because the two parts of the term are easily reconciled and do not contain any contradiction.

---

[2] *See generally Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367 (Fed. Cir. 2014); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327 (Fed. Cir. 2004); *Sunrace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298 (Fed Cir. 2003); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314 (Fed. Cir. 2001); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999).

The Cobalt Term contains two parts:

> [1] $M^1$ represents at least one transition metal element selected from Co, Ni and Mn,

and

> [2] wherein the content of Co in the transition metal $M^1$ of the formulae (1) and (2) is from 30% by mole to 100% by mole[.]

Appx0138 at 29:32-33, 29:55-57; *see* Appx0068. The second part of the term clearly and unmistakably narrows the scope of the claim by requiring the presence of cobalt, such that, when read in combination with the first part, $M^1$ can be cobalt alone, or a combination of cobalt with nickel and/or manganese, provided that the proportion of cobalt is at least 30%. Given the straightforward language of the Cobalt Term, a POSITA would not find any contradiction and would have no trouble discerning whether a combination of elements in $M^1$ falls inside or outside the bounds of the '035 Patent's claims. As such, the Cobalt Term is not indefinite.

### A. The Two Parts of the Cobalt Term Must Be Read Together, such that the Second Part Narrows the First Part by Requiring Cobalt in $M^1$.

ATL and the District Court have both failed to read the two parts of the Cobalt Term together, contrary to precedent. This Court has held that it is error to "read the disputed claim term in isolation rather than in the context of the surrounding claim language as § 112(b) requires."

*Tinnus*, 733 F. App'x at 1020. But by arguing that the first part of the Cobalt Term—"$M^1$ represents at least one transition metal element selected from Co, Ni and Mn"—requires that the claim ***must*** allow for the absence of cobalt, *see* Resp. Br. 19-22, ATL ignores the context of the remaining claim limitations. The only mandatory requirement from the first limitation is that $M^1$ must be comprised of some combination of those elements. It does not contain a requirement that precludes another limitation from narrowing the claim scope further. Read together with the first part, the second part of the Cobalt Term does just that, by requiring $M^1$ to have at least 30% cobalt, thus excluding elemental combinations with no cobalt or less than 30% cobalt from the scope of the claimed invention. Contrary to ATL's argument that the first part of the Cobalt Term can only be limited through disavowal of claim scope, the second part of the Cobalt Term explicitly narrows the scope of $M^1$ from the first part.

ATL argues that "it makes no sense to say that $M^1$ can be 'selected from' Co, Ni, and Mn only to turn around and say that certain of those 'selections' are not allowed after all." Resp. Br. 26. But "selected from" simply means that as long as the elements of $M^1$ come from the list of

three elements, the limitation is satisfied. Nickel and manganese are still available elements for $M^1$, as long as they are combined with at least 30% cobalt.

ATL also contends that "this case is no different from [*Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1362 (Fed. Cir. 2016)], where this Court held a dependent claim to be indefinite because it included an element that its independent claim excluded." Resp. Br. 22. But again, the first part of the Cobalt Term does not require the claim to allow for the absence of cobalt or require combinations with no cobalt or less than 30% cobalt to fall within the full claim scope. A contradiction of the kind found in the *Multilayer Stretch* case would only exist here if there were a true contradiction—such as if the first part of the Cobalt Term excluded cobalt and limited the elements to nickel and manganese, while the second part required cobalt.

In addition, ATL argues throughout its Response that Maxell knew how to craft alternative claim language that would have indicated in the first part of the Cobalt Term that the element cobalt is required. *See* Resp. Br. 9, 13, 33, 35-37. But contrary to ATL's suggestion, *see* Resp. Br. 32-33, 36, the '019 and '446 Patents are ***not*** related to the '035 Patent.

*See* Appx0027. *Compare* Appx0119 (priority details for '035 Patent), *with* Appx1355 ('446 Patent), *and* Appx1375 ('019 Patent). Therefore, language appearing in those unrelated patents should not be "afforded substantial weight." *Cf. Emerson Elec. Co. v. SIPCO, LLC*, 826 F. App'x 904, 914 (Fed. Cir. 2020). Further, what Maxell could have or should have done with the claim language is not the issue, and ATL cites no authority requiring specific language in the Cobalt Term to indicate that cobalt is required. The issue is, given the actual language of the Cobalt Term, viewed in light of the specification and prosecution history, is a POSITA able to determine with reasonable certainty the scope of the claim? *Nautilus*, 572 U.S. at 910. As Maxell has demonstrated in its Opening Brief and herein, the answer is Yes.

### B. A POSITA Can Easily Determine the Bounds of the Claimed Invention Based on Whether the Two Parts of the Cobalt Term Are Both Satisfied.

Because the first part of the Cobalt Term does not require the claim to allow for the absence of cobalt, to the exclusion of all other limitations, it is indeed a simple matter to reconcile the parts of the Cobalt Term. ATL's Response refuses to read the two parts of the Cobalt Term together and understand that their intersection defines the bounds of the term.

*See* Resp. Br. 25-27. But a POSITA would have no trouble determining the bounds of the invention and whether a given set of elements satisfies the term or not. *See* Opening Br. 37-40.

First, for the limitation "$M^1$ represents at least one transition metal element selected from Co, Ni and Mn," one would only need to ask: Are the elements of $M^1$ selected from cobalt, nickel, and manganese? If, for example, $M^1$ was (1) cobalt alone; (2) 50% cobalt and 50% nickel; (3) 50% nickel and 50% manganese; or (4) 50% cobalt, 25% nickel, and 25% aluminum, then the answer for (1), (2), and (3) would be Yes, because the elements in those combinations are selected from the set consisting of cobalt, nickel, and manganese, as the first part of the Cobalt Term requires. The answer for (4), on the other hand, would be No, because aluminum is not cobalt, nickel, or manganese.

Then, for the limitation "wherein the content of Co in the transition metal $M^1$ of the formulae (1) and (2) is from 30% by mole to 100% by mole," one needs to ask: Is $M^1$ at least 30% cobalt? This limitation clearly establishes that cobalt is required. For elemental combinations (1), (2), and (4) in the paragraph above, the answer to this question would be Yes, and for combination (3), the answer would be No.

In order to fall within the bounds of the claimed invention, ***both*** limitations must be met—the answer to ***both*** questions must be ***Yes***. Therefore, only elemental combinations (1) and (2) are within the bounds of the Cobalt Term and the claimed invention, and combinations (3) and (4) fall outside of the term. Both parties' experts, who are POSITAs, analyzed the Cobalt Term in essentially this manner and had no trouble determining whether a set of elements satisfied both parts and would therefore fall within the scope of the term. *See* Opening Br. 39.

Here, because a POSITA can easily determine whether a formulation of $M^1$ satisfies the two parts of the Cobalt Term, the term defines the boundaries of the claimed invention with reasonable certainty and is not indefinite. *Nautilus*, 572 U.S. at 909-10.

## III. Maxell Has Consistently Argued that the Two Parts of the Cobalt Term Must Be Read Together.

In arguing that Maxell's position on the meaning of the Cobalt Term changed in the District Court, supposedly demonstrating the term's indefiniteness, Resp. Br. 22-25, ATL misinterprets and ignores significant portions of the record. Maxell never changed its position on the Cobalt Term. As discussed in Maxell's Opening Brief, "Maxell explained to the District Court[] [that] when both parts of the Cobalt Term are read

***together***, the resulting elemental combinations for $M^1$ are essentially '[1] Co, or [2] Co and at least one transition metal element selected from the group consisting of Ni and Mn.'" Opening Br. 35-36 (quoting Appx0071).

ATL incorrectly contends that Maxell did not argue for reading the two parts of the Cobalt Term together or that the second part modifies the first part until Maxell's motion for reconsideration, Resp. Br. 24, but the record proves otherwise. Indeed, the District Court itself recognized Maxell's "conten[tion] that [ATL]'s indefiniteness argument is based on a 'willful refusal to read the two parts of the term together and a refusal to consider how a POSITA would understand the effect of the latter portion of the term defining the Co content on the former portion of the term broadly defining the possible elements.'" Appx0070 (quoting Maxell's sur-reply claim construction brief). The District Court likewise recognized Maxell's argument that, following "standard practice in drafting patent claims," the '035 Patent's inventors "first broadly drafted a *Markush* group to include Co and then narrowed it to require a specific amount of Co." *Id.* The District Court acknowledged these arguments from Maxell during the initial phase of claim construction, even if ATL

refuses to acknowledge them now. As such, ATL's argument that Maxell's position changed is entirely without merit.

## IV. The Specification and Prosecution History Support the Necessary Presence of Cobalt in M¹.

### A. ATL's Improper Application of the "Disavowal" Test Contradicts Controlling Precedent on the Need to Read the Cobalt Term in Light of the Specification and Prosecution History.

ATL's argument that "[t]he Court does not need to consider the specification or prosecution history because the parties on appeal do not dispute the plain and ordinary meaning of the M¹ Terms," Resp. Br. 14, reflects a fundamental misunderstanding of the applicable law. Well-established Supreme Court and Federal Circuit precedent hold that when evaluating claims for indefiniteness, those claims must be "viewed in light of the specification and prosecution history." *Nautilus*, 572 U.S. at 910. "'Claim language, standing alone' is not the correct standard of law and is contrary to uniform precedent. Patent claims are viewed and understood in light of the specification, the prosecution history, and other relevant evidence . . . ." *Nature Simulation Sys. Inc. v. Autodesk, Inc.*, 50 F.4th 1358, 1364 (Fed. Cir. 2022) (relying on specification and prosecution history to reverse district court holding of indefiniteness based on

claim language alone). Yet ATL ignores this precedent and asks the Court to rely on "[c]laim language, standing alone" to hold that the Cobalt Term is indefinite. This Court should reject ATL's misguided effort.

ATL argues that the intrinsic record is irrelevant if there is nothing therein that "suggests that the inventors manifestly disclaimed or disavowed the full scope of the *Markush* group (Co, Ni, and/or Mn)." Resp. Br. 27. But as discussed in Section I above, this appeal is about indefiniteness, not a disputed claim construction involving potential disavowal of scope. The rules relating to disavowal of claim scope are simply inapplicable here. And ATL is wrong that absent a disavowal, giving that limitation its plain and ordinary meaning means that the full scope of the *Markush* group must be within the scope of the claim as a whole, regardless of other limitations. Rather, additional claim language in the second part of the Cobalt Term requiring at least 30% cobalt expressly narrows the possible combinations in $M^1$ initially set forth by that first *Markush* group limitation.

Because controlling precedent requires courts to consider the specification and prosecution history, *Nautilus*, 572 U.S. at 910, and because

they both confirm to a POSITA that the Cobalt Term requires the element cobalt in $M^1$, the term is not indefinite.

### B. The Specification Supports the Cobalt Term's Requirement for Cobalt in $M^1$.

Viewing the Cobalt Term in light of the specification, as required, a POSITA would understand that the term requires the element cobalt in $M^1$. Opening Br. 43-45. As discussed above in Section II, the claim language itself is clear. If there were any remaining doubt, the specification reinforces the importance of cobalt to the invention. ATL contends that the examples in the '035 Patent's specification cannot limit the claims, Resp. Br. 29-31, and Maxell is not suggesting otherwise. ATL again incorrectly applies rules of ordinary claim construction to indefiniteness, and, while they are related, indefiniteness is a distinct issue. *See Nautilus*, 572 U.S. at 901 (establishing standard for indefiniteness). Here, the Cobalt Term itself limits the claims, and consistent with *Nautilus*, Maxell has presented evidence from the specification that informs how a POSITA would view the scope of the Cobalt Term.

As discussed in Maxell's Opening Brief, in addition to the examples in which every cathode active material includes at least 30% cobalt, the

specification describes the importance of including cobalt and identifies exactly the content requirement recited in the Cobalt Term:

> Preferably, the proportion of Co in the lithium-containing transition metal oxide is higher, since the density of the positive electrode mixture layer can be made higher. In the formulae (1) and (2), the proportion of Co in the transition metal element $M^1$ is preferably 30% by mole or more, more preferably 65% by mole or more, particularly preferably 95% by mole or more.

Appx0126-0127 at 6:64-7:3; *see* Opening Br. 44-45. ATL's Response does not address this disclosure. *See* Resp. Br. 29-31. In light of these teachings of the specification, a POSITA reading the Cobalt Term would have beyond reasonable certainty regarding the necessary presence of cobalt in $M^1$.

### C. The Prosecution History Supports the Cobalt Term's Requirement for Cobalt in $M^1$.

Likewise, the prosecution history of the '035 Patent confirms that the Cobalt Term requires the presence of cobalt in $M^1$. *See* Opening Br. 45-53. ATL's Response entirely fails to address either (1) Maxell's arguments during prosecution that distinguished the prior art *Oda* reference or (2) the examiner's Section 112 rejections demonstrating an understanding that cobalt was required. ATL's refusal to engage with either aspect of the prosecution history is understandable, because this history

clearly demonstrates to a POSITA that cobalt is required. *See* Resp. Br. 31-34.

As discussed in Maxell's Opening Brief, during prosecution, Maxell amended Claim 1 at one point to read, in relevant part, "wherein $M^1$ represents Co." Appx1259; *see* Appx1251. This amendment thus specified that $M^1$ was made up ***solely*** of cobalt. Maxell then relied on this composition of $M^1$ to distinguish the *Oda* reference, which Maxell argued "does not describe or teach that the transition metal ***consists of Co alone***." Appx1260 (bold emphasis added).

Not long thereafter, Maxell again amended Claim 1, in relevant part, as follows:

> wherein $M^1$ represents at least one transition metal element selected from Co, Ni and Mn, . . .
>
> . . .
>
> wherein the content of Co in the transition metal $M^1$ is 30% by mole or more.

Appx1272-1273. This amendment introduced language that eventually became the Cobalt Term, including the content requirement for cobalt. ATL argues in its Response that "[a]t no point did anyone comment on the obvious contradiction [this] amendment introduced." Resp. Br. 32.

ATL's observation is misplaced—no one commented on a perceived contradiction because there was no contradiction. ATL also argues with regard to the re-inclusion of nickel and manganese in the first part that "[t]he fact that the applicants added the limitations previously deleted demonstrate the clear intent to claim the full scope allowed under the claim language." *Id.* at 33. But ATL ignores the simultaneous addition of the new limitation requiring at least 30% cobalt, which maintained cobalt as a necessary element.

Further, Maxell continued to rely on its requirement for cobalt to distinguish *Oda*. Emphasizing precisely the two amended limitations quoted above and the requirement for at least 30% cobalt, *see* Appx1279-1280, Maxell again distinguished the *Oda* reference by arguing that "[*Oda*] does not describe or teach ***such a content of Co***," Appx1280 (bold emphasis added). Thus, contrary to ATL's argument, Maxell's amendment and argument distinguishing *Oda* informs a POSITA with greater than reasonable certainty that the Cobalt Term requires cobalt.

Later in prosecution, after dropping all prior art-based objections, the examiner introduced a number of Section 112 objections, including

two addressed to the presence of cobalt in $M^1$. Appx1295-1298. Specifically, the examiner raised the following rejections:

> 10. Claim[] 1 . . . [is] rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as based on a disclosure which is not enabling. The upper range of the content of the Co in the transition metal M1 is critical or essential to the practice of the invention . . . .
>
> . . .
>
> 13. Claim[] 1 . . . [is] rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite . . . .
>
> In claim 1 it is unclear which M1, Formula (1) or Formula (2) is being discussed in the phrase "wherein the content of Co in the transition metal M1 is 30% by mole".

Appx1297-1298. The examiner did ***not*** issue an indefiniteness rejection based on any lack of clarity as to whether the claims require cobalt in $M^1$. Indeed, each of these rejections refutes any uncertainty over whether cobalt is required because they reflect the examiner's understanding that cobalt is necessarily present in $M^1$.

The District Court improperly ignored the specification and prosecution history in its analysis and reached the wrong result. Although the District Court referenced Maxell's arguments regarding the intrinsic record in summarizing the parties' positions, its actual analysis is directed

to the claim language alone.[3] Appx0070-0072. Because a POSITA reviewing the specification and prosecution history would have no doubt that cobalt is a necessary component of $M^1$, the Cobalt Term is not indefinite.

## V. The Separate IPR Proceedings Demonstrate Both ATL's and the PTAB's Ability to Determine the Scope of the Cobalt Term.

Finally, ATL's discussion of the separate *inter partes* review ("IPR") decision is misplaced in this appeal of the District Court's judgment. Resp. Br. 10-11. As noted by ATL, on March 28, 2023, the PTAB issued a Final Written Decision in ATL's IPR challenge to the patentability of the '035 Patent, finding all claims unpatentable as obvious in view of the prior art. *Id.* at 11 (citing Appx2387-2430). Maxell will be separately appealing that decision. But ATL is incorrect in stating that this IPR decision "provides an independent basis to affirm the judgment of

[3] ATL's undeveloped argument concerning clear error review of factual determinations in relation to the experts' declarations is also flawed, Resp. Br. 34, because as Maxell noted in its Opening Brief, "the District Court did not make any factual findings and based its holding on the language of the claim only." Opening Br. 29. Thus, the Court's review is entirely de novo. *See id.*

invalidity."[4] *Id.* The IPR is a separate proceeding before the PTAB involving arguments and factual issues that were not considered by the District Court and that is not part of the District Court record being reviewed by this Court. Thus, it would be inappropriate for the Court to rely on the PTAB's IPR decision as a basis for affirming the District Court judgment. *See Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1385 (Fed. Cir. 2020) (declining to consider alleged alternative grounds for affirmance not decided by the district court); *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1339 (Fed. Cir. 2010) ("[A]s a general matter, a federal appellate court does not consider an issue not passed upon below . . . ." (internal quotation marks omitted)).

But ATL's introduction of the IPR in this appeal is curious given that ATL's positions before the PTAB directly contradict the arguments

---

[4] Further, ATL has failed to properly raise this meritless argument, as it appears only in its Statement of the Case and not in either the Summary of the Argument or the Argument section of its Response Brief. *See Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1379 (Fed. Cir. 2019) ("We have previously declined to address arguments that appear in the statement of facts but not the summary of the argument or argument sections of the brief."); *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 973 n.4 (Fed. Cir. 2006) (declining to consider appellee's argument that only "appear[ed] in the appellee's brief's sections 'Statement of the Facts' and 'Standard of Review,'" but not the "statement of issues presented, nor the summary of argument, nor the argument section" of the brief).

they make in this appeal. At no point in the IPR did either ATL or the PTAB suggest any difficulty in determining the scope of the Cobalt Term. *See Sonix*, 844 F.3d at 1379 (finding relevant in overturning finding of indefiniteness that examiner in reexamination had no "apparent difficulty in determining the scope" of the term and "was able to understand and apply the term in performing a search for prior art and mak[ing] an initial rejection").

To the contrary, ATL's IPR petition stated that the claims of the '035 Patent "do not include any terms that require specific construction" and that "a POSITA would understand [the claim terms] according to their plain and ordinary meaning." Appx2315-2316. ATL then had no trouble with the scope of the Cobalt Term in mapping the prior art to the limitations. *See* Appx2324-2327, Appx2337-2338. Likewise, the PTAB determined that it was not necessary to expressly construe any claim terms, Appx2395, and that the prior art taught the limitations of the Cobalt Term, Appx2426. While ATL here argues that the Cobalt Term is "insolubly ambiguous," Resp. Br. 21, that was clearly not the case in the IPR. Both ATL and the PTAB were able to determine the scope of the

Cobalt Term during the IPR proceedings, thus confirming that the term is not indefinite.

## CONCLUSION

For the reasons provided in its Opening Brief and herein, Plaintiff-Appellant Maxell, Ltd. respectfully requests that the Court (1) vacate the District Court's judgment; (2) reverse the District Court's holding that the Cobalt Term—"$M^1$ represents at least one transition metal element selected from Co, Ni and Mn, . . . wherein the content of Co in the transition metal $M^1$ of the formulae (1) and (2) is from 30% by mole to 100% by mole"—in Claim 1 of U.S. Patent No. 9,077,035 is indefinite; (3) hold that the Cobalt Term should be given its plain and ordinary meaning; and (4) remand to the District Court for further proceedings.

Dated: April 21, 2023

Respectfully submitted,

*/s/Hilary L. Preston*

Hilary L. Preston
Jeffrey T. Han
Erik Shallman
Corbin J. Cessna
VINSON & ELKINS LLP
200 W. 6th Street, Suite 2500
Austin, TX 78701
512.542.8400 Telephone
512.542.8612 Facsimile
Email: hpreston@velaw.com
Email: jhan@velaw.com
Email: eshallman@velaw.com
Email: ccessna@velaw.com

Eric J. Klein
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
214.220.7700 Telephone
214.220.7716 Facsimile
Email: eklein@velaw.com

*Counsel for Plaintiff-Appellant Maxell, Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on April 21, 2023.

All counsel of record in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: April 21, 2023

Respectfully submitted,

*/s/Hilary L. Preston*

Hilary L. Preston
VINSON & ELKINS LLP
200 W. 6th Street, Suite 2500
Austin, TX 78701
Phone: (512) 542-8400
Facsimile: (512) 542-8612
Email: hpreston@velaw.com

*Counsel for Plaintiff-Appellant Maxell, Ltd.*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1) because it contains 4,902 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

Dated: April 21, 2023

Respectfully submitted,

*/s/Hilary L. Preston*

Hilary L. Preston
VINSON & ELKINS LLP
200 W. 6th Street, Suite 2500
Austin, TX 78701
Phone: (512) 542-8400
Facsimile: (512) 542-8612
Email: hpreston@velaw.com

*Counsel for Plaintiff-Appellant Maxell, Ltd.*